Christian, J.
The record in this case presents for our consideration a single question; and that is whether, under the acts of congress relating to the removal of causes from state courts to the circuit courts of the United States, the appellant had the right to remove its case from the circuit court of Roanoke to the circuit court of the United States, in the judicial district in which the county of Roanoke was situate.
The appellant, the Continental Insurance Company of the city of New York, having its home office in said city of Yew York, but doing business in the state of Virginia, under the conditions and requirements of the statute law of this state, was defendant in a certain action at law, brought by Thomas A. Easey, upon an *218 insurance policy issued by said company, insuring against fire a eei’tain building belonging to said Kasey. Kasey, at the April term of the circuit court of' Roanoke 1873, recovered a judgment against said company. To that judgment a writ of error was awarded5 by one of- the judges of this court.
Upon this writ of error the case was heard at Wytheville in -July 1874, and this court reversed the judgment of the circuit court, and remanded the case for a new trial to be had in said circuit court of Roanoke. This reversal was in favor of the Continental Insurance Company. But when the case came on again to be heard in the Circuit court of Roanoke, upon the new trial awarded by this court, the company by its counsel filed the following petition.

To the honorable the judge of the circuit court of Roanoke county :

The petition of the Continental Insurance Company of the city of New York, respectfully represents, that it is a foreign corporation, created and having its place of business in the state of New York, and in legal contemplation is a citizen of that state; that it is sued in your honor’s court by one Thomas A. Kasey, a citizen of the state of Virginia, upon a contract of insurance; that the matter in dispute in said suit exceeds the sum of five hundred dollars, exclusive of costs,, and that there has not been a final trial of said cause. Your petitioner is advised, that under the laws of congress, in such cases made and provided, it has the right to have said cause removed into the circuit court of the United States for this judicial district; and it hereby offers good and sufficient surety for its entering copies of the papers in that court on or before the first day *219 of the next term thereof, and it prays your honor that a removal of said cause may be directed.
The Continental Insurance Company,
Of the city of New York,
By counsel.
This petition was accompanied by the following affidavit :
State op Virginia—
Roanoke county, to wit:
I, P. H. Gibson, agent and attorney of the Continental Insurance Company of the city of New York, do solemnly swear that I have reason to, and do believe, that from prejudice or local influence, the said Continental Insurance Company of the city of New York will not be able to obtain justice in the circuit court of Roanoke county, in the suit now pending in said court, in which Thomas A. Easey is plaintiff, and the said Continental Insurance Company of the city of New York is defendant.
P. H. Gibson.
Subscribed and sworn to by P. H. Gibson before me, F. Johnston, a notary public for the state of Virginia.
Given under my hand this 11th day of Hovember, 1874.
F. Johnston, N. P.
The circuit court of Roanoke denied the prayer of-the petition, and refused to order the removal of the case to the circuit court of the United States. To this ruling of the court the company excepted, and obtained a writ of error, which brings up the question to this court.
*220 There was a judgment in the court below against the company for the sum of $4,950.50; but against judgment no other error is assigned; and the whole case here turns upon the single question, whether the circuit court erred in refusing to remove the case, upon the petition of the company and the affidavit of its agent to the circuit court of the United States.
The solution of this question depends, 1st, upon the true construction to be given to the acts of congress relating to the removal of causes from the state courts to the United States courts; and, 2nd, upon the effect of the statute law of this state imposing certain conditions and requirements upon foreign insurance companies doing business in this state. First, as to the true construction to be given to acts of congress in reference to the removal of causes.
This motion is made under the provision of the act of congress approved March 2,1867, which declares that in a controversy between a citizen of a state, in which suit is brought, and a citizen of another state, when a party shall make and file an affidavit stating that he has reason to, and does believe, that from prejudice or local influence he will not be able to obtain justice in such state court, may at any time before final hearing or trial of the suit file a petition for removal of the suit into the next circuit court of the United States for the district in which his suit is pending. And then declares, that upon giving certain security the state court shall proceed no further in the suit. See 14 U. S. Stat. at Large 558-9.
It would seem sufficient to say, that this court has already by its unanimous judgment, construed this act of congress against the pretensions of the appellant in this case. In Beery v. Irick, 22 Gratt. 489, this *221 court construing this same act says: “The question we have to consider is, was the application (for removal of the case) made before the ‘final hearing trial,’ within the meaning and intent of the statute? The word ‘final’ in the act applies to and qualifies the word ‘ hearing,’ and not the word ‘ trial.’ In the act of 1866 the language is before 1 trial or final hearing.’ The transposition of the words in the act of 1867 so as to read, ‘before final hearing or trial’ was probably accidental and not affecting nor designed to affect any change in the meaning. The words ‘final hearing’ are ordinarily applied to cases' in equity, while the word ‘ trial ’ is applied to actions at law. The obvious and unmistakable intention of the statute was to require a party desiring a removal of his case, to make his application before a ‘trial’ in actions at law, and before a final hearing in suits in equity.” * * * “It certainly never was the object of the act of congress to provide for a review of the decisions of a state court, but simply for the exercise of an election by a party to a suit in a state court, to transfer it to another court of original jurisdiction for trial. The design manifestly was to give him an election between two tribunals, not to give him a chance at .both. Any other construction would be to confer upon the federal courts, whose jurisdiction is carefully limited by the constitution of the United States, an extraordinary and incongruous appellate jurisdiction, by which the judgment or decree of a state court solemnly pronounced in a case where it had the undoubted jurisdiction, could he reviewed, reversed and annulled by a federal court. * * * * Such unprecedented and daugerous jurisdiction in the federal courts will never be recognized by this court, unless the very letter of' the law imperatively requires it; and unless such law,. *222 if enacted by congress, shall be declared by the supreme court of the United States to be consonant the constitution which expressly limits the juris¿fiction of the federal courts.”
This was the construction of the act of 1867, and these the views expressed by this court in 1878, in my opinion in Beery v. Irick and Newton v. Bushong, 22 Gratt. 484.
I might be content to rest this case upon that‘opinion’, but that the able counsel for the appellant, in an argument of much learning, has called upon us to review our opinion in that case; and relies especially upon a recent decision of the supreme court of the United States; Insurance Company v. Morse, 20 Wall, U. S. R. 445; which is certainly adverse to our construction of the act of 1867.
That decision, adopting as its rule of construction the literal interpretation of the words of the act, declares that a party may at any time before a final trial remove his case upon proper affidavit and security. He may take his chances before a state court; may go up to the supreme court of the state, and take his chances there; and then, after years of litigation in the state courts, which have the unquestioned jurisdiction of his case, and to whose.jurisdiction he has voluntarily submitted, may, any time before his case is finally tried, remove it to a circuit court of the United States. How, while I have great respect for the decisions of the supreme court of the United. States, and the decisions of that august tribunal are always recognized as very high authority in this court, I cannot follow that court in the construction which it has given to the act of congress under consideration. Especially since the decisions of every state in the Union where the question has come up, except the *223 state of Rhode Island, has given a different construction to the act. Certainly the supreme courts of the states of Massachusetts, Ohio, Wisconsin, Maryland and Virginia have united in declaring that the application for removal of a case to the circuit court of the United States must be made before trial; and that after trial is had in a state court, the case cannot be removed. See Galpin v. Critchlow, 112 Mass. R. 339; Home Life Ins. Co. v. Dunn, 20 Ohio State R. 175; Akerly v. Vilas, 24 Wise. R. 165; Adams Express Co. v. Frego, 35 Mayr. R. 47;. Beery v. Irick, 22 Gratt. 484.
In ascertaining the true interpretation of the words “before final hearing or trial” in this act, we may properly refer to the earlier acts of congress on the subject of removing causes from the state courts to the circuit courts of the United States, as constituting parts of one judicial system. Under the first judiciary act of the United States, where the removal is claimed upon the ground that the defendant is an alien or citizen of another state, the right can only be exercised “at the time of entering his appearance,” and not “afterwards,” even with the assent of the state court. 1 U. S. Stat. at Large, 79; Gibson v. Johnson, Pet. C. C. 44.
So under act of congress passed during the war of 1812, as to officers civil or military, when sued in a state court for acts done by virtue of such office, he might remove the case to the United States court “at the time of entering his appearance,” 3 U. S. Stat. at Large 198, 200, 396; 14 Mass. R. 412.
So also the right of removing an action pending in a state court between citizens of the same state claiming lands under grants of different states, must be exercised by either party “before the trial.” 1 U. S. Stat. at Large 80.
*224 So also in suits against revenue officers brought in state courts, for acts done by virtue of their office, the could be removed “at any time before trial.”' 4 U. S. Stat. at Large 633.
So also by the act of congress of 1863, ch. 81, § 5,. a gujj. against any military or civil officer for acts, done as such, he might, “at the time of entering his. appearance,” remove a case from a state court to a circuit court of the United States. 12 U. S. Stat. at Large 756.
So also by act of 186.5, it was declared that the right of removing such cases should be exercised “before a jury is empannelled to try the same.”
The act of 1866 provides that, under its provisions, a cause may be removed “ at any time before trial or final hearing.”
ISTow the review of the previous legislation on the subject shows that up to 1867, certainly, there was no authority for removing from a state court to a federal court, any case whatever in which a trial on the merits had commenced.
Uow the question is, does the act of 1867, by simply transposing the word “final,” placing it before the word trial, as well as hearing, so as to make it read “final hearing or trial,” instead of “trial and final hearing,” reverse the whole policy of the law as-plainly declared in all the acts of congress on the subject from 1789 to 1866 inclusive? and by this slight transposition (accidental no doubt) of a single word, confer upon the federal courts the extensive, all-pervading and dangerous jurisdiction, which would constitute the federal courts appellate tribunals to the state courts. I cannot arrive at this conclusion, even if I have to disregard a decision of the supreme court of the United States. I prefer to follow the *225 decisions of the state courts (and adhering to my former opinion in Newton v. Bushong, supra) aid them in checking the modern spirit now so often manifested, in which the United States courts are stretching out their hands to grasp the jurisdiction which under the constitution, and under our ancient system of jurisprudence, belongs exclusively to the state courts.
It is worthy of note, in considering this question of construction of the act of 1867, that since the decision of the supreme court of the United States in the case of Home Insurance Co. v. Morse, 20 Wall. 445, there has been a significant legislative construction by congress of this very act. In 1874 there was a codification and revision of the acts of congress—directed to be published, when completed, under the direction of the secretary of state—and when promulgated by him to be accepted as the Revised Statutes of the United States. Accordingly on the 2nd of February 1875, the Hon. Hamilton Fish, Secretary of State, issued his proclamation, certifying the “Revised Statutes of0 the United States enacted by congress on the 22d day of Juné 1874, were prepared, printed and published according to the provisions of the act of June 20th, 1874;” and these Revised Statutes are now accepted and recognized as the Code of Revised Statutes of the United States.
In these Revised Statutes, p. 118, congress has adopted the act of 1866, and not the act of 1867, containing the transposition of the word “final” before the words “trial and hearing,” so that the provision of the act reads as follows: “ Third. When the suit is between a citizen of the state in which it is brought, and the citizen of another state, it may be so removed on the petition of the latter, whether he be plaintiff or *226 defendant, filed at any time ‘ before tee trial or final hearing’ of the suit; if before, or at the time of filing petition, he makes and files in said state court an affidavit stating that he has reason to believe, and does believe, that from prejudice or local influence he will not be able to obtain justice in such state court.”
It will thus be seen that the revisors of the statutes concur in opinion with this court and the other supreme courts of the states, where the question has been considered, that the transposition of the word “final” in the act of 1867,was merely accidental; and that the true construction to be given to the act, consonant with all the statute law theretofore enacted, and with the spirit of our system of jurisprudence is, that the application for removal of a case from a state court to a federal court must be made before the trial of an action at law, and before the final hearing of a case in equity.
These views lead me confidently to the conclusion, that the application for removal in this case came too late, and that the circuit court of Roanoke was not in error in overruling the plaintiff’s motion.
But there is another view of this question, which, though not raised in the argument of this case here, is well worthy of consideration.
The question is this: Is the plaintiff (the Continental Insurance Company) a citizen of another state in the meaning of the act of congress?
I am aware that it has been held by the supreme court of the United States that corporations of other states come within the purview of the act. That is the general principle from which I express no dissent. But here is a New York corporation doing business in the state of Virginia under the conditions and limitations prescribed by our statute. One of these condi *227 •tions is, that every such company, before they issue policies in the state, shall deposit with the treasurer of the state a certain fund, which is to remain intact meet the losses of citizens insured in such companies. There is another most important condition imposed on *11 such companies, to wit: § 20, ch. 86, Code 1873, p. 366: “Every such insurance company shall, by a written power of attorney, appoint some citizen of this commonwealth, resident therein, its agent or attorney,who shall accept service of all lawful process against such company in this commonwealth, and cause an -appearance to be entered in every action in like manner, as if such corporation had existed and been duly served under process in this state.” "
The plain object of that provision of our statute is to give to our citizens the privilege of suing these foreign corporations in the courts of this state.
This would be, in the last degree, a futile and incongruous provision of the law if the privilege to sue in the state courts is to be at once defeated, if the corporation as soon as suit is brought may remove the cause to another and foreign jurisdiction. This would defeat the very object of the statute.
My own view is that these corporations are placed by our statute on precisely the same footing quoad hoe ■as the home corporations, and that when they come into this state and accept the provisions of our statute law, they become domiciled here; and as to all contracts and obligations made and assumed under the provisions of our laws, they are no longer citizens of ■another state, but ai’e subject to the laws, to sue and be sued as citizens of this state.
The Continental Insurance Company, though chartered by the state of Kew York, when it commences ■business in this state, and complies with the terms of *228 the statute of Virginia by making necessary deposit and appointing an agent to accept process, becomes* to all contracts with citizens of Virginia, domiciled. ^ere’ and in contentions with our citizens growing out of policies of insurance, must sue and be sued in our gtate courts; and do not come within the terms or spirit of the act of congress relating to the removal of cases from a state court to a federal.
Upon the whole I am for affirming the judgment of the circuit court of Roanoke.
The other judges concurred in the opinion of Christian J.
Judgment aeeirmed.